UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

NATHANIEL ROBERT WHITE YOUNG,  )
                                )
    Plaintiff,                  )
                                )
v.                              )   No. 2:21-CV-00060-JRG-CRW
                                )
OFFICER LINTON,                 )
                                )
    Defendant.                  )

## MEMORANDUM OPINION AND ORDER

This is a prisoner's pro se complaint for violation of 42 U.S.C. § 1983. Now before the Court are Plaintiff's requests for entry of default as to Defendant Linton [Docs. 22, 27], Defendant Linton's objections to entry of default [Docs. 29, 36], and Defendant Linton's motion to dismiss the complaint [Doc. 35] and memorandum in support [Doc. 38]. Plaintiff filed a response in opposition to Defendant Linton's first objection to his request for entry of default [Doc. 31], a response in opposition to Defendant Linton's motion to dismiss [Doc. 39], and an objection to Defendant Linton's second objection to entry of default [Doc. 41]. For the reasons set forth below, Defendant Linton's objections to entry of default [Docs 29, 36] will be **SUSTAINED**, Plaintiff's requests for entry of default [Docs. 22, 27] will be **DENIED**, and Defendant Linton's motion to dismiss [Doc. 35] will be **GRANTED in part** and **DENIED in part**.

I.     DEFAULT

Plaintiff's requests for default are based on Defendant Linton's failure to timely file an answer after summonses issued for him were returned executed [Docs. 22, 27]. However, as counsel for Defendant Linton has now appeared and is actively defending this case on his behalf, Plaintiff is no longer entitled to entry of default. Fed. R. Civ. P. 55(a) (providing that a clerk must

enter default as to a defendant "[w]hen [the defendant] has failed to plead or otherwise defend").

Thus, Defendant Linton's objections to entry of default [Docs 29, 36] will be **SUSTAINED** and Plaintiff's requests for entry of default [Docs. 22, 27] will be **DENIED**. *See United Coin Meter Co., Inc., v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983) (holding that "[j]udgment by default is a drastic step which should be resorted to only in the most extreme cases and "[a]ny doubt should be resolved in favor of" a decision on the merits) (quoting *Rooks v. Am. Brass Co.*, 263 F.2d 166,169 (6th Cir. 1959)) (internal quotations and citations omitted).

## II. MOTION TO DISMISS

In his motion to dismiss this action, Defendant Linton asserts that Plaintiff's requests for injunctive relief and for Defendant Linton to be relieved of his occupation or demoted are moot and that the amended complaint fails to state a claim upon which relief may be granted [Docs. 35, 38]. For the reasons set forth below, this motion [Doc. 35] will be **GRANTED in part** only to the extent that Plaintiff's claim against Defendant Linton for yelling at him for being too slow on the way to court will be **DISMISSED** and **DENIED in part** as to all other grounds. Also, Plaintiff's request for relief in the form of demotion and/or termination of Defendant Linton in his complaint will be **DISMISSED** because the Court does not have the authority to grant this relief.

### A. Standard of Review

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*. at 679. When

2

considering a plaintiff's claims, all factual allegations in the complaint must be taken as true. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

### B. Injunctive Relief and Termination/Demotion of Defendant Linton

First, Defendant Linton asserts that Plaintiff's requests for him to be fired or demoted and "for an injunctive relief" from him are moot because he no longer works for Sullivan County [Docs. 38 at 1–3]. However, Defendant Linton did not file any public records to establish that he no longer works for Sullivan County, such that the Court could take judicial notice of that fact and find that these requests for relief are moot. As such, the Court will not dismiss these requests for relief on this ground at this time.

But as to Plaintiff's request for demotion and/or termination of Defendant Linton, the Court finds *sua sponte* that it does not have the authority to provide this relief. *Dickson v. Burrow*, No. 5:19-CV-P163-TBR, 2019 WL 6037671, at *2 (W.D. Ky. Nov. 14, 2019) (citing *Ross v. Reed*, No. 1:13-CV-143, 2013 WL 1326947, at *2 (S.D. Ohio Mar. 5, 2013) for its holding that "[t]he Court has no authority under § 1983 to direct the . . . police department to initiate any disciplinary proceedings against its employees" and *Theriot v. Woods*, No. 2:09-cv-199, 2010 WL 623684, at *4 (W.D. Mich. Feb. 18, 2010) for its holding that a court "has no authority under 42 U.S.C. § 1983 to . . . terminate the employment of [the defendants]"). Thus, the Court will **DISMISS** Plaintiff's request for this relief because it fails to state a claim upon which relief may be granted under § 1983. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) (providing that district may, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune).

### C. Harassment, Verbal Abuse, and Threats

Defendant Officer Linton next seeks dismissal of Plaintiff's complaint by asserting that allegations of harassment, verbal abuse, and threats are not sufficient to state a claim upon which

3

relief may be granted under § 1983 [Doc. 38 at 3–6]. The Court will summarize the substantive allegations in Plaintiff's complaint before analyzing Defendant Linton's assertions.

### i. Complaint Allegations

First, in August of 2020, Defendant Linton yelled at Plaintiff for going too slow while escorting him to court [Doc. 21 at 8]. Then, in November of 2020, Defendant Linton attempted to put Plaintiff in a cell and told the inmates in that cell that Plaintiff "was a woman killer and to take care of [him], and that he would give the [i]nmates extra food" [*Id.* at 7–8]. Also, on an unspecified date, Officer Linton told Plaintiff that "[he] was a tough guy for killing a wom[a]n" in front of ten or more people [*Id.*]. And at some point, Plaintiff broke his nose in a fight with another inmate, and another officer told Plaintiff that Defendant Linton instigated that fight [*Id.*].

Additionally, on February 6, presumably of 2021, Defendant Linton threatened to take Plaintiff to "administration segregation" after he heard Plaintiff talking to two officers about overcrowding in his cell [*Id.* at 5]. Defendant Linton then called Plaintiff profane names and stated that if Plaintiff put his uniform on, he would take Plaintiff somewhere and beat him up, and that "[Plaintiff] was a little punk" if he did not do so [*Id.* at 5–6].

A few hours later, Defendant Linton returned to Plaintiff's cell to take another inmate for an insulin shot, at which time he removed a water bag Plaintiff used for exercise, made derogatory comments about Plaintiff's use of the water bag, and sarcastically said three times "'[i]t takes a [r]eal [m]an to kill a woman [and] child'" loud enough for all of the surrounding cells to hear [*Id.* at 6]. Defendant Linton then called Plaintiff a derogatory name for not doing anything in response, and, when he later returned the other inmate who got the insulin shot to Plaintiff's cell, made a profane hand symbol towards Plaintiff and stated that Plaintiff "was a b*tch for not doing anything" and that he would beat Plaintiff up if he came out of the cell [*Id.* at 7]. He also said that

4

Case 2:21-cv-00060-JRG-CRW   Document 42   Filed 01/14/22   Page 4 of 8   PageID #: 196

he would get someone named "'[B]obby Height'" to beat Plaintiff up and reiterated that Plaintiff "was a woman and child killer" [*Id.*].

### ii. Analysis

As set forth above, Defendant Linton asserts that Plaintiff's allegations that Defendant Linton verbally abused, harassed, and threatened him are not cognizable under § 1983 and therefore the complaint should be dismissed. But this argument ignores the fact that Plaintiff alleges that many of Defendant Linton's threats, harassment, and verbal abuse of him came soon after he complained to other officers about his overcrowded cell, and that these allegations therefore at least arguably support a claim for retaliation in violation of Plaintiff's First Amendment rights. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (holding that a claim for retaliation requires a prisoner to establish that (1) he "engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct"); *Doss v. McPherson*, No. 2:17-CV-00044, 2020 WL 8474760, at *4 (W.D. Mich. June 5, 2020) (finding that a genuine issue of material fact remained regarding a retaliation claim where the plaintiff alleged that the defendant "threat[ened] to place [the plaintiff] in administrative segregation for filing grievances").

Moreover, while Defendant Linton accurately notes that Courts in this Circuit, and in this District, have found that threats, harassment, and verbal abuse directed towards prisoners fail to rise to the level of an Eighth Amendment constitutional violation and Plaintiff cites the Eighth Amendment in his amended complaint [Doc. 21 at 10], the Court has not located any specific indication in the record that Plaintiff is a convicted prisoner, and it is apparent that Plaintiff was

5
Case 2:21-cv-00060-JRG-CRW   Document 42   Filed 01/14/22   Page 5 of 8   PageID #: 197

housed in the Sullivan County Jail, rather than a correctional institution, at the time of the events in his complaint. Thus, the Court assumes that Plaintiff was a pretrial detainee at the time of the incidents herein for purposes of examining his excessive force and failure to protect claims.[1]

It is well-settled that prison officials have a duty to protect inmates from violence by other inmates and to take reasonable measures to protect their safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). Liability attaches to a defendant's failure to protect a pretrial detainee where the inmate demonstrates that he was "incarcerated under [a] condition[] posing a substantial risk of serious harm," *id*. at 834, and the defendant deliberately and recklessly failed to address that condition even though he knew or should have known of it. *Brawner v. Scott Cty.*, 14 F.4th 585, 596–97 (6th Cir. 2021) (citations omitted). Also, to establish an excessive force claim in violation of the Fourteenth Amendment, a pretrial detainee must demonstrate that "the force purposely or knowingly used against him was objectively unreasonable" and "amount[ed] to punishment." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473, 2475 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). Moreover, while the Sixth Circuit has found that "idle threats and verbal harassment" are insufficient to rise to the level of a constitutional violation, it has also found that where a guard threatened a convicted prisoner's life while the guard brandished a deadly weapon, this act rose to the level of cruel and unusual punishment that violated the prisoner's Eighth Amendment rights. *Small v. Brock*, 963 F.3d 539, 541–42 (6th Cir. 2020) (citing *Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004)).

---

[1] The Court has located a November 14, 2019, article indicating that Plaintiff was sentenced to twenty-two months in jail for violation of probation when he appeared in court during that week. https://wcyb.com/ news/local/ murder-case-of-kingsport-man-accused-of-killing-pregnant-woman-bound-over-to-grand-jury (last visited Jan. 14, 2022). This appears to suggest that Plaintiff was a convicted prisoner at the time of some, if not all, of the events in his complaint. But even if he was, his excessive force and failure to protect claims would still proceed for the reasons set forth herein.

While Plaintiff's allegation that Defendant Linton yelled at him for being too slow while escorting him to court on one occasion appears to be the type of idle "verbal harassment" that does not rise to the level of a constitutional violation and thus is subject to dismissal, the remainder of the threats, verbal abuse, and harassment that Plaintiff attributes to Defendant Linton support his claim for retaliation and/or suggest that Defendant Linton not only failed to protect Plaintiff from other inmates but also deliberately placed Plaintiff in the path of harm from other inmates by (1) labelling Plaintiff a child and/or woman killer in a manner that would likely subject Plaintiff to retribution by inmates and (2) specifically encouraging a group of inmates to "take care of" Plaintiff after calling Plaintiff "a woman killer" and offering the inmates a reward in the form of extra food for doing so. *LaFountain v. Martin*, 334 F. App'x 738, 741 (6th Cir. 2009) (citing *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001) for its holding that "labeling an inmate a snitch satisfies the *Farmer* standard and constitutes deliberate indifference to the safety of that inmate"). And, as Plaintiff alleges that Defendant Linton's actions led to Plaintiff having a fight with another inmate that broke his nose, it appears that Defendant Linton may have successfully placed Plaintiff in the path of harm from other inmates in a manner that amounted to punishment.

Accordingly, Plaintiff's request for relief in the form of termination and/or demotion of Defendant Linton will be **DISMISSED**, and Defendant Linton's motion to dismiss will be **GRANTED in part** only to the extent that Plaintiff's claim that Defendant Linton yelled at him for being too slow while escorting him to court on one occasion will be **DISMISSED** and **DENIED in part** to the extent that Plaintiff's remaining claims will proceed.

III. CONCLUSION

For the reasons set forth above:

7

1. Defendant Linton's objections to entry of default [Docs 29, 36] are **SUSTAINED**;

2. Plaintiff's requests for entry of default [Docs. 22, 27] are **DENIED**;

3. Plaintiff's request for demotion and/or termination of Defendant Linton is **DISMISSED**;

4. Defendant Linton's motion to dismiss [Doc. 35] is **GRANTED in part** to the extent that Plaintiff's claim that Defendant Linton yelled at him for being too slow while escorting him to court on one occasion is **DISMISSED**;

5. Defendant Linton's motion to dismiss [*Id.*] is **DENIED in part** to the extent that the remainder of Plaintiff's claims will proceed herein; and

6. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE